Test, test, test, test. Good morning, Your Honors. Next case is 25-1212 and 25-1213, New England Fishermen's Stewardship Association v. Howard Lutnick, et al. Counsel? Good morning, Your Honors. John Gore for the New England Fishermen's Stewardship Association. Of course, permission, I'd like to reserve three minutes for rebuttal. You may reserve three minutes. The government's own concessions in this case. There's no dispute that council members lack valid Article II appointments and that the pocket veto powers they possess are significant. There's also no dispute- Counsel, does your case depend entirely on what you call the pocket veto powers violating the appointments clause? And therefore, it follows from your point of view that the Secretary's adoption of the Framework 65 adjustment necessarily fails? Or do you have other arguments that even if you put the two subsections, three subsections aside, which you have conceded are more or less irrelevant to the injury, the direct injury your client suffered, just bear with me. I know you have problems with that phrasing. Do you have arguments that if this is just a straight Framework 65 case, that nonetheless, the appointments clause has been violated? Yes, we do, Your Honor. Could you deal with those first, please? I'd be happy to. We do make the first argument that Your Honor laid out. Oh, I am well aware of that. You're well aware. I'm both standing and the merits. We think that's sufficient for standing under Collins and Frye today. Well, we'll get there. But standing, from my point of view, is not in general. It goes to particular challenges. Just so you know what you will have to address later. But let's just deal with Framework 65. Thank you, Your Honor. So on the merits, we have made the argument that the counsel's rule-developing powers used to promulgate the final rule are, in fact, significant executive authorities, and therefore, that the appointments clause has been violated. Let me lay out why that's the case. The counsel's rule-developing powers allow the counsel first to oust the secretary's regulatory authority. Whenever the counsel is actively engaged in developing a plan, amendment, or a proposed rule, he has the authority to develop his own plan, amendment, or proposed rule. Well, can we separate them? So can you deal with the plan separate from the regulations? Because I see different sort of statutory things going on in each section. So why don't we start with the plan and tell us why the plan power is, in your mind, significant authority to make these counsels and inferior officers, or principal officers, in some sense. Sure. So on the plan, as I said, it ousts the secretary's authority to develop his own plan or amendment so long as the counsel is engaged in that process. The plan or amendment can also become final if the secretary takes no action with respect to it within the statutory frame, the statutory timeline. When a plan becomes final, it's binding on the executive branch, and it's also binding with respect to implementing regulations, because all regulations have to be consistent with the plan and amendment. So I guess what your friends would say, I guess I just want a precise response to this, so what your friends would say, I think, is that the plan itself works no coercive, has no coercive effect on any third person outside the government, on any citizen, on any person. So what case supports the idea that significant authority includes the power to do things that only have sort of an effect on internal government operations as opposed to effect on some third party? We think there's several such cases, Your Honor, because finality is not the hallmark of significant executive authority. If it were, there'd be no inferior officer doctrine, because all inferior officers have to have their work. But every case I'm aware of, like Braidwood, and the thing that's being reviewed, once that review is over or not taken, it does work some effect on a third party, like Braidwood, that required all insurance companies to pay for the things identified. So this is internal to the government. I guess what case supports that idea, that something that has internal effects is significant authority? Sure. We would say Braidwood, Lucia, and all those cases support that, because they anchor the decision-making to that particular framework. And in each one, Lucia is an ALJ, right? That's correct. And so they're making decisions in cases about evidence and all things where some litigant is before them, that's outside the government. Braidwood is insurance companies, that's outside the government. This is inside the government. So is that just not a distinction that matters, or has that ever come up? I don't know if that's ever come up, and we don't think it's a distinction that matters, because in any event, in all of those cases, some principal officer has to sign off on the inferior officer's work before it becomes binding on the third party. And when the inferior officer conducts its analysis or does its work, that anchors the decision-making of the agency to that initial determination at that level. That's true in Braidwood, for example, where the task force identifies preventive services that it recommends be included for mandatory coverage. The secretary, according to the U.S. Supreme Court, secretary of HHS, has the authority to review all that and block all that. And if he does not, it goes into effect and binds insurance companies. That is correct. And here, if the plan goes into effect, it binds the secretary and it binds future rules that have to be consistent with the plan under the statute. Let me address the rule developing powers as well, since your owner asked about those. Those are significant authorities as well for several reasons. First, as I mentioned, they oust the secretary's authority to engage in rulemaking of his own. They require the secretary to review the council's submission. In the language of the statute, the secretary shall review the proposed rule submitted by the council. The secretary has no discretion on that point. Moreover, when the secretary reviews the council's proposed rule, the secretary is constrained in the scope of that review. The review has to be for consistency with applicable law. The secretary's review is not de novo. The secretary, therefore, has to defer to the substantial policy judgments that the council makes as it weighs policy decisions inherent in the proposed rule. The secretary's consistency review does not allow the secretary to override those policy decisions as long as the council's decisions are consistent with the plan and with the national standards. There may be many ways to construct a rule that is consistent with applicable law and policy guidance. Whichever one the council selects, as long as that is consistent, has to be upheld and deferred to by the secretary. I'll note that each of these powers that we've been discussing, the council's rule-developing powers, and also the power to have a plan or amendment take effect if the secretary takes no action, were not considered by the Third Circuit in the Lowstadt case. But there's no 30-day provision for the regulation. So the 30-day thing seems to be Congress thinking, if the secretary chooses to do nothing, we're going to make sure a plan goes into effect. But for the regulations, there's no cognate provision, which makes me think that there, Congress is considering, well, if the secretary doesn't want to send these forward, it doesn't have to, and we're not going to make them take effect or be promulgated in the register on their own. That's correct. Although that's no different than the ALJs, for example, in Lucia. Their initial determinations have not become binding on the parties. But they get to make all sorts of rulings that do just apply. That's why I understood they were inferior officers. So they make an on-the-spot evidentiary ruling. That's a ruling. That's not going to be reviewed by the SEC later. That's the overall thing, Mike. But it's those individual final decisions as a case is litigated that those people get to make, and that is what makes them officers. And there are all kinds of individual rulings along the way that the council may make with respect to policy questions that the secretary may choose not to review. So looking at the statute 1854A, your argument depends in large part on the end of 3, if the secretary does not notify a council within 30 days of the end of the comment period of the approval, disapproval, or partial approval of a plan or amendment, then such plan or amendment shall take effect as if approved. So then the next logical question is, all right, what is the effect of a plan or amendment? And Judge Aframe has just gone through a long series of questions with you, drawing a distinction between the plan and regulations. If you go down to subparagraph 6, the secretary may propose regulations to implement any plan or amendment. There is no requirement that the secretary actually promulgate, propose, and then promulgate regulations. The statute gives him discretion at that point. Why doesn't that discretion just eliminate the argument you've been making to us? Here, because the authority that's being exercised here is the 1854B authority under the council-driven process. That statute says that when the council proposes an implementing regulation, the secretary shall review it, and it constrains the scope of that review to consistency with applicable law. I'll also say that with respect to a plan or amendment, private parties would be well-advised to adhere to the plan or amendment, since all regulations have to be consistent with the plan or amendment. But to your specific question, Judge Lynch, that's the difference. We're traveling under 1854B, which removes the secretary's discretion with respect to reviewing the council-submitted proposed regulation. As I mentioned, none of these powers were discussed by the Third Circuit in Lowstown. So the Third Circuit did not have occasion to determine whether they were significant or whether the severance remedy it adopted, which we've opposed for many reasons in our brief, would be appropriate to fix a constitutional violation with respect to these provisions. What are the ramifications if we were to find the council invalid? What's the – what are the follow-on effects from that? The relief that we've sought here is vacatur of the final rule and its drastic reductions in the fish catch limits that are harming our fishermen members. We think that's an appropriate remedy under Lucia and other cases where there has not been a properly and constitutionally appointed officer who purports to take action on behalf of the United States. The courts – the Supreme Court has emphasized that the proper remedy in that case is vacatur of the official – the purportedly official action. But if – but if – if I may. Yeah. If – but if the council is not constitutional, are there ramifications beyond the scope of this case? I understand your relief request, but are there other follow-on effects that would be destabilizing? We don't think that there would be for several reasons. First of all, any challenges to past regulations would be beyond the challenge period of 30 days within the statute. How does Corner Post affect that? I mean, if there are new fishermen who come into the market, are they not have standing to challenge that for 30 days after they come into the world? They might have standing to bring it as an applied challenge, but I'll also point out that we've been discussing some other regulatory powers that the Secretary has. The Secretary could declare an emergency and engage in regulation at that point if the Secretary wants to restore these limits or some other limits. The Secretary also has regulatory authority where the council is powerless to act. And I think a declaration that the council violates the Appointments Clause, certainly I would believe the government would argue that that renders the council powerless to act and powerless to act in a timely fashion in a way that triggers the Secretary's independent regulatory authority. Should we deal with the other topic? Yeah. I upset your order of argument. In fairness, would you now like to talk about the clauses that I have called irrelevant to the Framework 66-65 adoption? Sure, Your Honor, and I'll be very brief on that point. First of all, it's clear under Freitag and Collins that the mere possession of those powers is sufficient to establish standing for us to bring this lawsuit. The government's now staking its defense of the council on this standing argument. It's inconsistent with Collins and Freitag, and in fact, no federal court has adopted this standing argument with respect to an appointments case. We also believe that that's sufficient to prove our case on the merits. An officer is an officer for all purposes, not an officer for some purposes and not others. I have some basic Article III issues with reliance on these other clauses. I know that the Third Circuit and Judge Bibas went off on that, but that issue wasn't actually argued. It's not in the district court opinion. It is not in the briefs on the Court of Appeals. So I'm not certain that the issue has been thoroughly thought through. You haven't been injured by those other clauses unless we accept your view of there's a special standing rule and a special Article III rule for appointments clause cases. I think you still got to show injury, traceability, and redressability. So whether you put it under standing, you put it under rightness, or you put it under remedial law, I'm not certain that you meet any of those three requirements as to these other sections, nor am I sure that the Third Circuit did no analysis, really, of why these other subsections not at issue here do violate the appointments clause. And it seems to me one wouldn't even begin to address those questions unless there were some facts there. We don't decide hypothetical issues. So that's where I'm coming from. You're going to have to convince me otherwise. Let me do my best, give you my best shot right now, Judge Lynch, if I may. Let me cite to you from FRITAG pages 881 and 882 of the opinion. There there was an analogous argument made by the government with respect to the challenge to special trial judges in FRITAG. There was an argument that some of their powers were significant and had not been exercised against the challenger. There were four different statutory bases, each one of which involved the appointments clause. They sued as to the one which injured them. And then the court does consider all of the powers and quite sensibly says, oh, because they have some incidental, I'll call them secret, no, I won't call them secretarial, ministerial-type powers, that doesn't mean that they don't exercise significant powers. Well, as a common sense proposition, of course. But how does that alter Article III? I don't think that the court actually meant to do that. And Justice Scalia, in his partial concurrence and dissent, denies there are any special structural appointment clause rules that are different from the normal rules. Again, I just point you to the language of the majority opinion that says the standing argument seems to us to be beside the point, because a possession of a mixture of authorities doesn't change officer status. I also just want to point out- But it's true that standing goes remedy by remedy, right? You agree with that? So just take an easy case like the Supreme Court case in Lyons, right? You might want damages, but you also want an injunctive remedy going forward. And we look at the standing separately. And I'm not necessarily disagreeing with you, but what I find hard here is you don't really want severability and striking down some side provision. You want to use the fry tag thing that you're talking about to invalidate Amendment 65. So I guess I'm trying to figure out how to think about what I know the basic law is, which is we proceed remedy by remedy. And then the striking down of the pocket veto provisions like the Third Circuit did, that wasn't your idea. That was the Third Circuit's idea. So how does that all work together? So let me be clear. This is only one of the arguments we've made. We've also made the argument that the rule-developing powers themselves are significant, and there's no dispute that those powers were used and that those powers, the exercise of those powers resulted in the final rule that is our claim to interest. So let me point that out. And those powers were not analyzed by the Third Circuit in those steps. I'll just say with respect to Collins, I'll read from that opinion as well. It says, for purposes of traceability and standing, the relevant inquiry is whether the plaintiff's injury can be traced to allegedly unlawful conduct, not the provisions of the law that is challenged. And here, on the pocket veto authorities only, our argument is that all of the actions of the counsel are void because they lack proper Article II appointments. We don't need to address that issue if the court agrees with us that the rule- developing powers are significant. What do you do with California, which suggests that you have to trace your injury to the specific statutory provision at issue? Again, two responses to that, Your Honor. First is that there's the special standing doctrine under Freitag and Collins with respect to appointments cases, which I realize Judge Lynch does not agree with. And second, we have traced it to the appointment provisions of the statute. California was not an appointments case. Here, we're tracing the injury to the defective appointment mechanism. That would be the basis of our appointments challenge to the counsel's composition. So you're saying essentially that you satisfy both California and Collins. You don't see some tension between Collins and California as to tracing it to the conduct of the defendant versus to a specific statutory provision? We don't see any kind of conflict with respect to our argument on the pocket veto powers. Again, we have our other arguments with respect to the rule-developing powers that don't involve this question. Can I just ask, one of the pocket veto powers in the 50-some years that this act has been in effect has never actually happened. So I'm having a little trouble seeing how this is significant authority if nobody has ever utilized that provision. I don't think the Supreme Court's doctrine or the doctrine in this area turns on the frequency with which the power is used, but rather its significance. But if it's never caused any injury to anybody. That might be a question for a different case, because what we have here is... I might agree with you that it's a question for a different case and not this one. Thank you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Daniel Helinen for the federal government. The Fishery Management Council members are not officers for purposes of the Appointments Clause because they occupy purely advisory positions. Fifty years ago, Congress enacted and President Ford signed the Magnuson-Stevens Fishery Conservation and Management Act to ensure that our nation's fisheries would be safeguarded for the future. What do you do with the rule-making powers such that... Well, parse that a little bit more finally. With the ability to set forth a plan that if the Secretary does nothing, that plan goes into effect and then regulations must be consistent therewith, how is that not a significant power? So first on the plan side, the Secretary, of course, retains the discretion throughout the process to disapprove a plan before those 30 days expire. So the Secretary can block any plan from going into effect. But the Secretary might not do anything, and in that case, the plan goes into effect. So why is that scenario not a significant power? So first, because the Secretary makes a decision to allow the plan to go into effect. But second, because the Secretary also retains... But that was the same with the SEC, right, in Lucia. They could choose to review an ALJ or not review. If they didn't review, it was final. That was significant. That's the same, at least pretty similar thing as to what's happening here, right? So it can't be just choosing to let it go forward. Can't really win the case for you. So I think the distinction on the plan side is, of course, that the plan itself is not binding. It has no coercive effect, as Judge Aframe put it, because the plan cannot impose obligations on regulated parties. That's only through the regulations that it is solely the province of the Secretary to promulgate. But the regulations have to be consistent, right? Correct. So the regulations need to be consistent with the plan. But that's why it's important that, in this context, the Secretary has allowed the plan to go into effect. But even setting that aside, the regulations, nonetheless, are still subject to the ultimate policy judgment and discretion of the Secretary. The Secretary reviews any proposed regulation for compliance with the law, right? And that includes national standards in the Magnuson-Stevens Act that are in Section 1851 of Title 16. These are broadly worded policy provisions of the statute that encompass basically the full range of policy tradeoffs that the Secretary is going to be looking at when considering whether or not to promulgate a regulation and what the nature of that regulation would be. So as long as the Council promulgates a plan that is consistent with one of those wide range of choices, then the Secretary's rule has to be consistent with that policy choice, right? It has to be consistent with the plan. But the Secretary has a free hand to revise the regulations as he sees fit, as he sees fit to accord with these broad policy considerations. And these are things like looking at optimum yield, looking at efficiencies to the extent practical. So these are very flexible standards that enable the Secretary to exercise all of those policy judgments that he would like to make when promulgating the regulations. And there's no substantive limit on the Secretary's ability to revise the regulations. The Secretary has to consult with the Council and publish an explanation. But the Secretary essentially has a free hand to revise the regulations under Section 1852. So is it your position that the Council could say, and I'm going to just make this very simple, we want A, not B, and the Secretary promulgates regulations that says B, not A? So I think there could potentially be a challenge to suggest that in that context that the regulation isn't consistent with the plan. But in that context, if the Secretary wanted B instead of A, he would simply disapprove the plan and not let it go into effect. And I think if there's any concern – But what if the Secretary hadn't acted within the 30 days? So didn't run that down, didn't realize he wanted to come to a – he or she come to a different policy choice? So the plan is there. And then the Secretary says, whoops, I really wanted something else. Can the Secretary do B, not A, directly contrary to what the Council put forward? So the Secretary at the regulation stage can look at the proposed regulation and say, this actually – I don't think this comports with my view of the policy requirements of the Magnuson-Stevens Act, and so I'm going to return the regulation to the Council and let them have another go at it. So the Secretary has that sort of gatekeeping authority to prevent any regulation that he disagrees with from going into effect. Well, I think we're mixing regulation and plan. So the plan – let's say the plan goes into effect, and then the Secretary can create regulations. Can those regulations be directly contrary to the plan? That is, under my hypothetical, has gone into effect because of inaction by the Secretary. So in the hypothetical, we're talking about secretarially promulgated regulations under 1854C, or would this be Council-proposed regulations under 1854? Well, let's take both. So in my discussion earlier, I was primarily focused on 1854B, where we're talking about regulations proposed by the Secretary. Let me just – so on B, can the Secretary, under this scheme – so there's affirmative, there's negative. Okay. What if the Secretary just decides, I just don't want to forward these, I'm just going to put them in my pocket, and not act upon them? Is that permissible? And not – there will be no regulations because I'm going to do nothing. I think in that circumstance, the Secretary would disapprove the regulations if he didn't want the regulations to take effect. And I think if the Court has concerns that the Secretary's authority to do that could be constrained, I would point to the motive analysis from Judge Bagus. But the Secretary has no good faith basis to do that. Let's say the – I don't know, the Secretary likes haddock and wants to eat a lot of it, and so doesn't want these regulations, which doesn't fit, into any of those things. So the negative in your construction has to be based on one of these things. What if it's an extraneous thing that's motivating the Secretary? Is the Secretary of some way to act on that extraneous thought that he or she has? I think if the Court is concerned that the Secretary would not be able to effectuate his policy judgment within the constraints of looking at consistency with the national standards and other types of law, the Court could look at it the way that Judge Bagus did and Lofts did, in terms of construing the statute in the way that empowers the Secretary to exercise that judgment because there's no express prohibition on the Secretary exercising that judgment. So it strikes me there are a couple of strands to your argument. One is that the Secretary has to consider national standards consistency and is charged by Congress with taking into account kind of a broader framework of a broader set of concerns when the Advisory Council sends to him or her some proposed regulations. And that is true whether he agrees, disagrees, or just chooses to let them go into effect. But the second strand is to promulgate regulations, you have to go through notice and comment. And the commentary period may well point out some problems which were not anticipated by anyone before and may lead to changes in the regulations. Has that, in fact, happened? Has the notice and comment period resulted in changes from proposed regulations which were based on Advisory Council plans and then the final regulations? Yes. I don't have anything in the record I can point you to, Your Honor. But you know more about this field than we do. Sure. So the Secretary does take into consideration comments on the proposed regulations, and that's part of our argument as well is that at that stage of adopting the regulations, if the Secretary was bound by what the Council proposed, then this notice and comment procedure would essentially be meaningless because he wouldn't have authority. That's what I was getting at. Exactly, yes, Your Honor. So we think that that is why the Secretary retains this ultimate policy discretion over the rulemaking process, both because he has this broad review power and because he's engaging in notice and comment rulemaking. In other words, maybe to put a fine point on this, do you think the limitations in B.1 apply to the revisions under B.3, or they do not apply in how the Secretary chooses to make revisions? No, they don't because it's not in the notice and comment rulemaking provision itself. So that is just about responding to the initial proposed rule. So that's why the Secretary has this ultimate discretion and is the only party in this process that has the lawful authority, authority under federal law to impose obligations on fishery participants. What do you do then with Freitag and Lucia, which do seem to suggest that you don't need final authority in order to be an officer? So I think the way to understand those two cases as adjudication cases, this is a rulemaking case, and this goes back to I think a point that Judge Aframe was making earlier, is that in an adjudication process, the adjudicator, when empowered with these sorts of tools that were available to the judges in those two cases, are constantly making rulings under law that impose obligations on the parties that are in the adjudication, taking testimony, compelling discovery, et cetera. And those also shape the ultimate rulemaking record, or excuse me, the ultimate adjudication record that goes before the final decision maker. Here the council members have no authority to impose any legal obligation on a private party, and the record that is before the secretary when he's making his ultimate decision is the secretary's record and not the council's record. So there's no sort of intermediate exercise of lawful authority over a party, and there's also no sort of ultimate constraint posed on the ultimate decision maker. And so I think those are the two key differences between this case and this. Can you tell me why the power – so I think the closest case as far as regulatory conduct is Braidwood. So can you explain to me why what's done here is less officer-like than what was done in Braidwood, which was officer-like? So in Braidwood the task force would make these recommendations that, under the Affordable Care Act, imposed obligations directly on the insurance provider. So the coverage requirement would go into effect consistent with the task force's recommendation. That is ultimately subject to secretarial review, but the recommendation itself had legal effect. And here the plan simply never has legal effect unless the secretary takes additional action. So the order of operations is just different. I can take a minute to speak on the standing issue with respect to the ancillary provisions. I think our view here is that this is a different context from FriTag, in part because of these dynamics that we were talking about earlier. In FriTag the court was looking at these special trial judges that exercised these authorities over proceedings that were sufficient under the Appointments Clause to render them officers. So the part I don't understand, I guess I don't follow that only because it says, like our alternative holding is B-1, 2, and 3 allow these judges to make final decisions in certain small cases that are not at issue here. We have an alternative holding about B-4, but B-1, 2, and 3 is our decision. What I don't understand or is hard for me is when you get to the end of FriTag, they say, well, these are properly appointed people by the court. So the issue of remedy doesn't come up. So how do we understand what to do here if we get to the end of the story, unlike FriTag with these pocket veto case provisions? Maybe we do come to a different end where we have to deal with remedy. So how do we understand, help me understand why there's no standing when we get to the end, and they want the remedy of it's out, and you say, but there's a lesser remedy, and so because there's a lesser remedy we'd like you to give, that ruins their standing. I guess I'm just having trouble putting that together. So I think in FriTag the court was looking at a combination of powers in the adjudication context that couldn't be disentangled. And so what's distinct about this rulemaking context is that in individual agency actions under review, the agency will or will not exercise discrete powers that are captured in specific statutory provisions. And here when we get to the end. But I don't actually think that's a fair reading of FriTag, that part. I'm not sure that answers the question, but it's really saying, all right, for this B-4, we agree that the B-4 big cases, it gets reviewed by somebody else, but you're going to make a bunch of little decisions, and those make you some kind of officer. Okay, maybe we're wrong about those little decisions, but they still have B-1, 2, and 3 powers that let them make final decisions on small cases. So we're right either way. That's what I understand FriTag to be saying, which suggests that even though B-1, 2, and 3 powers have nothing to do here, they are important. But that case doesn't get to remedy. There's no remedy because the government wins. Here, like, it would all come down to remedy. And I guess I'm trying to have somebody explain to me, how do we think about standing when the remedy isn't the one they want, but it's the one the court can impose? Well, I think the court needs to start, of course, with constitutional avoidance. And the courts, the Supreme Court's cases on this issue have consistently advised that the courts should be drawing the narrowest possible path to a judgment as possible, where Congress clearly didn't intend for an entire statutory scheme to collapse if a particular small provision had a constitutional defect, that the court should focus on preserving that underlying scheme. And I think that because it's so clearly segregable in this case, where these two ancillary provisions undisputably had no role in the agency action at issue, that, you know, looking to the case or controversy at issue here, is this agency action, Framework Adjustment 65, lawful or not? These two provisions simply have nothing to do with that question. So even if in another proceeding with another agency action, those provisions might come into play, and the court could say, here we have a controversy about whether these provisions are lawful, and these create an appointments clause. But what about Collins v. Yellen, where you trace it to the conduct of the defendant, and if there is an unconstitutional appointment, they don't have proper authority as a result of that, how is it you don't get traceability through that analysis? I think just because in this context, the core of what the agency is doing, what the councils are doing, is making these purely advisory recommendations. And this is just a separate subject matter that has nothing to do with what the council members are doing in this case. So I think it's just a matter of looking to California, and I also don't think these are intention, which says that you're looking at when the statutory provision comes into play, when it's actually being enforced. So then aren't they just wrong on the merits in your view? Like when you do an appointments clause problem in a regulatory context, you should only examine the appointments clause problem based on the powers that are actually being used, and since they are relying on other powers, they're just wrong on the merits? I think the court doesn't necessarily need to go that far. I think, you know, there's just not a lot of these cases, and so this is an appropriate narrowly tailored way to resolve this issue, by concluding that the vast majority of what's going on in the councils is clearly fine under the appointments clause. There's these two small problems. They're not at issue here. Let me add before you sit down one last question, which is just Judge Lynch's question to your friend, which is she suggested at least that under Buckley, these unused provisions, one of which the Secretary seems like they can, by their own member instructing them what to do, can make go away. These just aren't significant authorities. And, you know, in Lucia, Justice Kagan, I think, talked about, well, we've never really said what this significant authority means. So do you think these even are significant authority? So we have not appealed the district court's conclusion that these two ancillary provisions are significant authority. As my friend pointed out, we notified Congress of that. No, but you have said we shouldn't reach the issue, which I take not to be a concession, that these things are in fact significant exercises of authority. So we're not taking the position here that they are not significant exercises. All right. Thank you. Thank you, Your Honors. You have three minutes. Thank you, Your Honor. Three main points. First, counsel argued that the council, the Fish Council, is purely advisory. That's incorrect for two reasons. First, the pocket veto powers are clearly not merely advisory. And second, even the rule developing powers are not advisory. Congress knows how to create advisory bodies. It did so with respect to the councils in subsection C. When the secretary exercises his or her independent authority to regulate, all the secretary has to do is consult with the council and receive the council's input. That's totally different than what happens in subsection B, where the council itself is deciding when a regulation should be promulgated, collecting evidence, collecting a record, assembling an administrative record to support that, all on its own motion, and then submitting a proposed regulation to the secretary, subject to a narrow standard of review for consistency only. But their point is twofold. One is if they never want this thing to go into effect, they just keep rejecting it, which there's no time limitation on them doing that. And even if they submit it, when it's over, they can revise it to say, the secretary can revise it to say what they want. I mean, those are the two responses. What's wrong with that? We think both of those responses misread the act. First of all, the secretary can't do nothing under 1854b because the statute says the secretary shall review the council's proposal. The secretary's review also is narrow. Its review, his or her review, is limited to consistency with applicable law, which includes What's the limitation on revisions? Statutory limitation in B3 on making revisions. What's the limitation on that? There's also a limitation on revisions. If the secretary thinks revisions are necessary, the secretary has to remand to the council or at least consult the council before even making minor revisions to the proposed regulation. But it doesn't give the council any power in that consulting process. But it does require the secretary to at least consult with the council. And if the secretary thinks other revisions have to be made, to send it back to the council in the first instance. That is a recognition that the council itself is exercising significant authority to make these policy judgments. The other argument from council is that adjudication and rulemaking are somehow different. We agree that they're different. And any difference militates in favor of rulemaking being a more significant authority than adjudication. The council does not have to wait for an agency enforcement action before acting. It can act on its own. If you think the revisions clause has some ambiguity, do you think constitutional avoidance is an appropriate technique in this case? No. We don't think constitutional avoidance is appropriate in this case. Why not? Because we don't think there is any ambiguity. But it comes down to that, whether there is. That's correct, Your Honor. Thank you. And we would say. . . Thank you. Thank you. Stephen. May I just say I thought the case was well argued on both sides. It's a pleasure to have good argument. Thank you. I agree.